UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| WELLSVILLE MANOR, LLC, d/b/a ) <br> WELLSVILLE MANOR CARE CENTER, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> JILL L. CAMPBELL, ) <br> ) <br> Defendant. ) | Case No. 1:20-cv-000621 |

**OPINION AND ORDER**
**GRANTING DEFENDANT'S MOTION TO DISMISS AND**
**GRANTING PLAINTIFF LEAVE TO FILE AN AMENDED COMPLAINT**
(Doc. 3)

On February 10, 2020, Plaintiff Wellsville Manor, LLC d/b/a Wellsville Manor Care Center filed this action against Defendant Jill L. Campbell in the Supreme Court of New York, Allegany County and alleged claims of injurious falsehood (First Cause of Action) and defamation per se (Second Cause of Action) arising out of statements Defendant allegedly made on or about July 29, 2019 to the New York State Division of Human Rights ("DHR") and subsequently to the Equal Employment Opportunity Commission ("EEOC") after Plaintiff terminated her employment. On May 26, 2020, Defendant removed the action to federal court pursuant to the court's diversity jurisdiction. 28 U.S.C. § 1332(a)(1). On June 2, 2020, Defendant filed a motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiff has not opposed the motion.

Plaintiff is represented by Jayla Rose Lombardo, Esq. Harvey P. Sanders, Esq., represents Defendant.

## I.    The Complaint's Allegations.

On or about September 15, 2017, Defendant was hired as a speech therapist at a skilled nursing facility operated by Plaintiff. Defendant's responsibilities "included

performing speech and swallowing evaluations, creating speech therapy treatment plans, providing therapeutic treatments within her scope of practice, providing family/caregiver training as necessary, completing appropriate documentation, and working in an integrated manner with other disciplines such as nursing and dietary." (Doc. 1-1 at 2-3, ¶ 5.) Plaintiff alleged that Defendant had "performance problems," such as failing to follow safety protocols and providing inconsistent care. Plaintiff purportedly received at least two complaints from residents that Defendant failed to provide speech therapy treatments resulting in written and verbal warnings to Defendant. *Id.* at 3, ¶ 6. Plaintiff further alleged that Defendant "committed time theft by falsifying her time sheets[,]" which Plaintiff confirmed by reviewing the video from its surveillance system. *Id.* at 3, ¶ 9. On February 25, 2019, Plaintiff terminated Defendant's employment.

On or about July 29, 2019, Defendant filed complaints with DHR and the EEOC alleging that Plaintiff discriminated against her on the basis of age, disability, and gender and created a hostile work environment. Plaintiff quoted portions of Defendant's DHR and EEOC complaints as follows:

> In the beginning of my employ with [Plaintiff] I noticed practices that alarmed me. I had conversations with [the Director of Rehab], complaining about what I considered potentially illegal and fraudulent practices of [Plaintiff].
>
> [T]his was the beginning of [Plaintiff] targeting me in retaliation for what I believe was me being outspoken of the potentially illegal and fraudulent practices I witnessed and made [Plaintiff] aware of.
>
> During this meeting I expressed that I felt this was unadulterated and unprofessional harassment.
>
> Each time I had to take time off work . . . I continued to be contacted by [Plaintiff] and harassed. The stress of [Plaintiff's] continual communication only exacerbated my disability.
>
> I feel my termination was discrimination based on disability. . . . I feel their termination was a pretext to their illegal discrimination.
>
> It is clear from [Plaintiff's] actions that they were on a witch hunt to find anything they could discipline me for and ultimately cause termination. Any chance [they] got they treated me disparately in violation of the [Americans with Disabilities Act ("ADA")].

... [Plaintiff's investigation into allegations of Defendant's job performance] is retaliation for opposing discrimination and was creating a hostile work environment.

*Id.* at 4, ¶ 12 (internal quotation marks omitted).

After an investigation, DHR found Defendant's allegation that Plaintiff had unlawfully discriminated against her was not supported by probable cause and further found that:

> [Defendant] received write-ups for performance issues beginning around February of 2018, prior to the disclosure of her disability to [Plaintiff] in April of 2018. . . . Investigation did not show any nexus between [Defendant's] age, disability[,] and/or sex and any adverse employment action taken against her. [Plaintiff] has articulated a legitimate, non-discriminatory business reason for terminating [Defendant's] employment, which was not shown to be a pretext.

(Doc. 1-1 at 5, ¶ 16.) DHR dismissed Defendant's complaint and closed the case.

In its Complaint, Plaintiff alleges Defendant's claims of discrimination "had no basis in law or in fact" and were raised "in bad faith[.]" *Id.* at 5, ¶¶ 18-19. It seeks damages in the form of lost time and resources and attorney's fees incurred in defending itself against Defendant's DHR and EEOC complaints. For the alleged reputational harm it suffered, it seeks "special damages in the amount of $5,379.50 in legal fees[,]" monetary damages for its claim of injurious falsehood, and both compensatory and punitive as well as attorney's fees and costs. *Id.* at 6, ¶ 25.

## II.   Conclusions of Law and Legal Analysis.

### A.   Standard of Review.

To survive a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To determine whether a complaint states a plausible claim for relief, the court must apply a "plausibility standard, which is guided by two working principles." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (internal quotation marks and alterations omitted). "First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal

3

conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678). "'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss,' and '[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Although a response to the pending motion to dismiss has not been filed, Plaintiff's lack of opposition is not dispositive. *See McCall v. Pataki*, 232 F.3d 321, 323 (2d Cir. 2000) ("If [the] complaint is sufficient to state a claim on which relief can be granted, the plaintiff's failure to respond to [the] Rule 12(b)(6) motion does not warrant dismissal.").

**B.    Whether Plaintiff Failed to Plausibly State a Claim for Defamation.**

Defendant argues that Plaintiff's claim for defamation must be dismissed because Plaintiff failed to allege the essential elements of defamation per se or plead special damages. "Under New York law, the elements of a defamation claim are 'a false statement, published without privilege or authorization to a third party, constituting fault[,] . . . and it must either cause special harm or constitute defamation per se.'" *Peters v. Baldwin Union Free Sch. Dist.*, 320 F.3d 164, 169 (2d Cir. 2003) (quoting *Dillon v. City of New York*, 704 N.Y.S.2d 1, 5 (N.Y. 1999)); *Matherson v. Marchello*, 473 N.Y.S.2d 998, 1000 (N.Y. App. Div. 1984) (observing that, unless a statement is defamatory per se, the statement also must result in special damages or "the loss of something having economic or pecuniary value which must flow directly from the injury to reputation caused by the defamation") (citation and internal quotation marks omitted).

New York recognizes certain categories of statements as actionable without

4

pleading special damages including "those that (i) charge the plaintiff with a serious crime; (ii) tend to injure the plaintiff in his or her trade, business[,] or profession; (iii) imply that the plaintiff has a loathsome disease; or (iv) impute unchastity to a woman." *Albert v. Loksen*, 239 F.3d 256, 271 (2d Cir. 2001). "Where a statement impugns the basic integrity or creditworthiness of a business, an action for defamation lies and injury is conclusively presumed." *Celle v. Filipino Rep. Enters. Inc.*, 209 F.3d 163, 180 (2d Cir. 2000) (alteration omitted) (quoting *Ruder & Finn Inc. v. Seaboard Sur. Co.*, 422 N.E.2d 518, 522 (N.Y. 1981)). However, where the challenged statement "tend[s] to disparage or reflect negatively on the quality, condition[,] or value of a product or property[,]" the claim is one for product disparagement rather than defamation per se. *Kirby v. Wildenstein*, 784 F. Supp. 1112, 1115 (S.D.N.Y. 1992).

"Statements of pure opinion are . . . not defamatory." *Grayson v. Ressler & Ressler*, 271 F. Supp. 3d 501, 516 (S.D.N.Y. 2017). In general, "a statement of opinion that is accompanied by a recitation of the facts on which it is based or one that does not imply the existence of undisclosed underlying facts" constitutes a statement of opinion. *Gross v. N.Y. Times Co.*, 82 N.Y.2d 146, 153 (N.Y. 1993) (citation omitted). Whether a statement is an opinion or a fact depends on (1) whether the language has a precise meaning which is "readily understood" or whether it is "indefinite and ambiguous;" (2) whether the statement is capable of being objectively characterized as true or false; (3) an examination of the full context of the communication; and (4) "consideration of the broader social context or setting surrounding the communication[.]" *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 402 n.7 (2d Cir. 2006).

In her DHR and EEOC complaints, Defendant described "what [she] considered potentially illegal and fraudulent practices of [Plaintiff]" and alleged retaliation based on "what [she] believe[d] was [her] being outspoken of the potentially illegal and fraudulent practices [she] witnessed and made [Plaintiff] aware of." (Doc. 1-1 at 4, ¶ 12.) Although potentially inflammatory, Defendant's statements related to Plaintiff's conduct as an employer, not as a skilled nursing facility, and "signal[ed] . . . readers or listeners that what [was] being read or heard [was] likely to be opinion, not fact[.]" *Steinhilber v.*

5

*Alphonse*, 68 N.Y.2d 283, 292 (N.Y. 1986) (internal quotation marks omitted).

In the absence of a viable claim for defamation per se, to survive a motion to dismiss, Plaintiff must allege special damages, which "consist of 'the loss of something having economic or pecuniary value which must flow directly from the injury to reputation caused by the defamation[.]'" *Thai v. Cayre Grp., Ltd.*, 726 F. Supp. 2d 323, 330 (S.D.N.Y. 2010) (quoting *Celle*, 209 F.3d at 179). Special damages "must be fully and accurately identified with sufficient particularity to identify actual losses[.]" *Matherson*, 473 N.Y.S.2d at 1000-01 (internal quotation marks omitted). "[R]ound figures or a general allegation of a dollar amount . . . will not suffice." *Nunez v. A-T Fin. Info. Inc.*, 957 F. Supp. 438, 441 (S.D.N.Y. 1997). "The allegation that [the plaintiff] has incurred legal fees does not satisfy" the requirement to plead special damages. *BCRE 230 Riverside LLC v. Fuchs*, 59 A.D.3d 282, 284 (N.Y. App. 2009).

In this case, Plaintiff's contention that it suffered financial harm in the amount of $5,379.50 incurred in hiring an attorney to defend against Defendant's DHR and EEOC complaints fails to further allege special damages under New York law. Similarly deficient is Plaintiff's contention that it "has suffered damage to its reputation within the community" and "embarrassment to [it] and its reputation[.]" (Doc. 1-1 at 5, 7 ¶¶ 20, 33.) Plaintiff does not allege that it lost business as a result of Defendant's statements nor does it explain how those statements were disseminated to the community. Because "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim for special damages under New York law, dismissal of Plaintiff's defamation claim is warranted. *Iqbal*, 556 U.S. at 678.

In the alternative, Defendant argues that she is entitled to dismissal of Plaintiff's defamation per se claim because the statements Plaintiff relied upon as the basis of its defamation claim were privileged. *See Arvanitakis v. Lester*, 44 N.Y.S.3d 71, 73 (N.Y. App. Div. 2016) (affirming dismissal where alleged defamatory statements were subject to the defense of privilege). "Public policy mandates that certain communications, although defamatory, cannot serve as the basis for the imposition of liability in a defamation action." *Toker v. Pollak*, 44 N.Y.2d 211, 218 (N.Y. 1978). "Communications

falling within this category are deemed privileged, either absolutely or qualifiedly." *Id.* at 218-19. "This immunity, which protects communications irrespective of the communicant's motives, has been stringently applied[]" and "its protective shield has been granted only to those individuals participating in a public function, such as judicial, legislative, or executive proceedings." *Id.* at 219 (citations omitted).

"For absolute immunity to apply in a quasi-judicial context, the process must make available a mechanism for the party alleging defamation to challenge the allegedly false and defamatory statements." *Stega v. N.Y. Downtown Hosp.*, 31 N.Y.3d 661, 661 (N.Y. 2018). Courts in New York have applied this rule to proceedings before DHR and the EEOC and ruled that "any statements made during or in preparation for said proceedings are protected by an absolute privilege[.]" *Missick v. Big V Supermarkets*, 115 A.D.2d 808, 811 (N.Y. App. Div. 1985).

Because Plaintiff has failed to plead any statements which Defendant made other than those made in the course of the DHR and EEOC proceedings, dismissal is warranted on this basis as well. Defendant's motion to dismiss Plaintiff's defamation claim is GRANTED.

### C. Whether Plaintiff Has Plausibly Alleged a Claim for Injurious Falsehood.

The tort of injurious falsehood "consists of the knowing publication of false matter derogatory to the plaintiff's business of a kind calculated to prevent others from dealing with the business or otherwise interfering with its relations with others, to its detriment." *Grayson*, 271 F. Supp. 3d at 518 (quoting *Waste Distillation Tech., Inc. v. Blasland & Bouck Eng'rs, P.C.*, 523 N.Y.S.2d 875, 877 (N.Y. App. Div. 1988)). "The elements of an injurious falsehoods claim are: (1) falsity of the alleged statements; (2) publication to a third person; (3) malice; and (4) special damages." *Id.*

"The cause of action [of injurious falsehood] differs from defamation in that a defamatory statement impugns the basic integrity or creditworthiness of a business while an *injurious falsehood is confined to denigrating the quality of the plaintiff's business's goods or services*." *Id.* (emphasis in original) (internal quotation marks omitted); *see also*

7

*Henneberry v. Sumitomo Corp. of Am.*, 415 F. Supp. 2d 423, 470 (S.D.N.Y. 2006) ("The New York Court of Appeals has stated that injurious falsehood lies where the statement is confined to denigrating the quality of the [plaintiff's] business' goods or services, . . . while a cause of action for defamation lies where the statement impugns the basic integrity or creditworthiness of a business[.]") (internal quotation marks omitted).

    Plaintiff's claim for injurious falsehood fails for two of the same reasons as its defamation claim. It has failed to plead special damages and the statements on which it relies for its claim are privileged. With regard to the nature of the statements at issue, Plaintiff alleged that Defendant "intentionally published false information pertaining to Plaintiff's business practices and its ethics when [she] accused Plaintiff of illegal and unethical business practices, harassment[,] and discrimination[.]" (Doc. 1-1 at 6, ¶ 22.) Defendant's statements which Plaintiff quotes, however, are couched as Defendant's opinions and thus fail to satisfy an essential element of its claim. *See id.* at 4, ¶ 12 (citing "unadulterated and unprofessional harassment"; "I feel my termination was discrimination based on disability. . . . I feel their termination was a pretext to their illegal discrimination[]"; "they treated me disparately in violation of the ADA."); *see also Liberman v. Gelstein*, 605 N.E.2d 344, 348 (N.Y. 1992) (affirming dismissal because "[t]he statement must be made with reference to a matter of significance and importance for that purpose, rather than a more general reflection upon the plaintiff's character or qualities. Thus, charges against a clergyman of drunkenness and other moral misconduct affect his fitness for the performance of the duties of his profession, although the same charges against a business[]man or tradesman do not so affect him") (citation and internal quotation marks omitted).

    Finally, dismissal is appropriate because Plaintiff's injurious falsehood claim, which relies on the same alleged statements by Defendant and resulted in the same alleged damages, is duplicative of its defamation claim. *See O'Brien v. Alexander*, 898 F. Supp. 162, 172 (S.D.N.Y. 1995) (dismissing as duplicative plaintiff's injurious falsehood claim where it "relie[d] on the same statements that form[ed] the basis of the defamation claim[]" and "plaintiff's damages for the injurious falsehood claim [were] exactly the

8

same as those alleged for the defamation claim"). Because Plaintiff fails to state a claim for injurious falsehood, the court GRANTS Defendant's motion to dismiss this claim.

### D.     Whether to Grant Plaintiff Leave to Amend.

Pursuant to Fed. R. Civ. P. 15(a), courts "should freely give leave" to amend a complaint "when justice so requires." However, "[l]eave may be denied 'for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.'" *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)). At this juncture, it is not clear whether Plaintiff can assert a claim for relief in light of the applicable privilege. The court, however, cannot conclude that any such claim no matter how framed would be futile. Plaintiff is hereby GRANTED leave to amend within twenty (20) days of the date of this Opinion and Order consistent with the Federal Rules of Civil Procedure and this court's Local Rules.

## CONCLUSION

For the foregoing reasons, the court GRANTS Defendant's motion to dismiss Plaintiff's Complaint (Doc. 3). Plaintiff is hereby GRANTED leave to amend within twenty (20) days of the date of this Opinion and Order consistent with the Federal Rules of Civil Procedure and this court's Local Rules. Failure to file an Amended Complaint within the time provided shall result in dismissal of this action.

SO ORDERED.

Dated this ___ day of December, 2020.

Christina Reiss, District Judge
United States District Court